Norma E. Ortiz, Esq.
ORTIZ & ORTIZ, L.L.P.
127 Livingston Street
Brooklyn, New York, 11201
Tel. (718) 522-1117

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re

CLAUDIO MEZA,                                      Case No.  11-47197
                                  Debtor.
--------------------------------------------------------X          Chapter 11

## DEBTOR'S DISCLOSURE STATEMENT REGARDING PLAN OF REORGANIZATION DATED SEPTEMBER 28, 2012

I.       INTRODUCTION

      This is the disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Claudio Meza (the "Debtor").  This Disclosure Statement contains information about the Debtor and describes the Plan of Reorganization (the "Plan") filed by the Debtor on September 28, 2012.  A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.

      ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

    The proposed distributions under the Plan are discussed at pages 5-9 of this Disclosure Statement.  General unsecured creditors are classified in Class 3, and will receive a distribution between 3% and 10 % of their allowed claims in quarterly payments commencing 180 days from the Effective Date, for the 60 month period from the Effective Date[1] of the Plan.

     A.    **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case;
- How the Plan proposes to treat claims or equity interests of the type you hold  (i.e., what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,

---

[1] All capitalized terms are defined in Article I of the Plan.

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Debtors believe the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet approved – referred to as "confirmed"– the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1. *Time and Place of the Hearing to Approve This Disclosure Statement and Confirm the Plan*

The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will take place on_____, at the U.S. Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York 11201.

2. *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to ORTIZ & ORTIZ, L.L.P., 127 Livingston Street Brooklyn, New York, 11201. See section IV(A) below for a discussion of voting eligibility requirements.

Your ballot must be received by _____, or it will not be counted.

3. *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon Ortiz & Ortiz, L.L.P., 127 Livingston Street, Brooklyn, New York 11201, Office of the U.S. Trustee, 271 Cadman Plaza East, Brooklyn, New York 11201, and the Chamber of Hon. Nancy H. Lord, 271 Cadman Plaza East, Brooklyn, New York 11201. by _____.

4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Norma E. Ortiz, at the address and telephone number below.

C.    **Disclaimer**

The Court has not yet approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.  The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.


II.    **BACKGROUND**

A.    **Description and History of the Debtor and Events Leading to Chapter 11 Filing**

The Debtor filed a chapter 11 petition on August 19, 2011.  The Debtor has remained in possession pursuant to 11 U.S.C. § 1107 since the case conversion.  No unsecured creditors's committee has been appointed in this case.

The Debtor earns his income by performing the occasional temporary job and by collecting rents to maintain his two parcels of real property.  The Debtor's bankruptcy case has been relatively uneventful: the Debtor retained professionals, obtained a bar date for claims, and reorganized his affairs.

The Debtor would have filed a Chapter 13 petition if his debt did not exceed the limit on debt contained in the Bankruptcy Code.

While his case has been pending before the court, the Debtor has filed operating reports, paid quarterly fees to the U.S. Trustee, and paid his first mortgage notes.  Since the second lien-holders on the Debtor's properties are wholly unsecured, the Debtor will seek – prior to the court's approval of his plan - an order deeming the two second lien-holder unsecured.

B.    **Debtors' Compensation**

As stated above, the Debtor does not work regularly.  Any additional income he derives from his temporary jobs will be dedicated to payment to creditors under the Plan. The Debtor has filed monthly operating reports that demonstrate the his net monthly income shall be no less than $200 a month.  That income shall be used to fund the Plan.

C.    **Significant Events During the Bankruptcy Case**

3

There were no significant events that occurred after the case was filed.

D.      **Projected Recovery of Avoidable Transfers**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.  He does not believe there are any such claims.

E.      **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to the claim.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article V of the Plan.

F.      **Current and Historical Financial Conditions**

The identity and fair market value of the estate assets are listed in Exhibit B.  The Debtor estimated the value of his personal property and relied on an appraisal for the value of his real property.

The Debtor's most recent operating report, and a summary of his post-petition operating reports, is annexed as Exhibit C.  A liquidation analysis is annexed as Exhibit D.

III.    **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

A.      **What is the Purpose of the Plan of Reorganization**?

As required by the Bankruptcy Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.      **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Debtor has not placed the following claims in any class:

1.      **Administrative Expenses**

Administrative expenses are costs or expenses of administering the Debtors' chapter 11 case

which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

a.    *Type*:   Professional Fees, Subject to Approval by the Court

*Estimated Amount Owed*:  $5,000 for legal fees for Ortiz & Ortiz, L.L.P., as Debtor's counsel, above the amount paid as a retainer, and $2,500 Clem Yeboah, C.P.A., as Debtor's accountant[2].

*Proposed Treatment*:  Paid in full on the effective date of the Plan, or according to separate written agreement with the Debtor, and according to court order.

b.    *Type*:   Expenses Arising in the Ordinary Course of Business After the Petition Date

*Estimated Amount Owed*:    None, other than monthly living expenses.

*Proposed Treatment*:  Paid in full on the effective date of the Plan, or according to terms of the obligation if later

c.    *Type*:  Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date

*Estimated Amount Owed*:    None

*Proposed Treatment*:  Paid in full on the effective date of the Plan, or according to terms of obligation if later

d.    *Type*:  Clerk's Office Fees

---

[2] The amounts stated herein have not been reviewed throughly and approved by the Debtor.  Moreover, any professional fees must be approved as reasonable and necessary by the Bankruptcy Court.

*Estimated Amount Owed*:      None

*Proposed Treatment*:  Paid in full on the effective date of the Plan

e.      *Type*: <u>U.S. Trustee's Quarterly Fees</u>

*Estimated Amount Owed*:      None

*Proposed Treatment*:  Paid in full on the effective date of the Plan

**TOTAL DUE ON THE EFFECTIVE DATE**:          <u>$7,500</u>

**TOTAL DUE AFTER THE EFFECTIVE DATE**:          <u>None, unless agreed otherwise</u>

### 2.      **Priority Tax Claims**

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtors' estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

Description: **The Debtor does not believe he owes any priority tax claims**.
Estimated Amount Owed:
Date of Assessment:
Treatment:
Pmt interval:
Quarterly payment:
Begin date:
End date:
Interest Rate:
                              Total Payout Amount: n/a

### C.      **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan and the proposed treatment that they will receive under the Plan:

### 1.      <u>**Classes of Secured Claims**</u>

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy

estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim, unless the claim consists of the first mortgage on the Debtors' residence or the Debtors treat the claim as fully secured.

The following chart lists all classes containing Debtors' secured pre-petition claims and their proposed treatment under the Plan:

| | |
|---|---|
| **<u>Class 1:</u>** | **<u>J.P. Morgan Chase Bank, NA</u>** |
| Description: | First mortgage and note of Debtor's residence |
| Insider? | No |
| Impairment: | None |
| Treatment: | Debtor will make monthly payments pursuant to the terms of the loan note and pay arrears listed in proof of claim filed in the amount of $2,157.20 |
| Secured claim of: | J.P. Morgan Chase Bank, Nat'l. Association under Min No. 100062604703987695 |
| Collateral: | 94-05 Alstyne Ave., Corona, New York Block 1603, Lot 87 |
| Priority of lien: | First |
| Principal owed: | $826,100.19 (approximately) |
| Pre-pet. arrearage: | $2,157.20 |
| Total claim: | $826,100.19 plus $2,157.20 |
| Impaired? | No |
| Monthly Pmt.: | $3,130.74 (approximately) |
| Pmts Begin: | On going |
| Pmts End: | to be determined |
| Balloon pmt: | None |
| Interest rate %: | Per contract |
| Treatment of Lien: | Per contract |

Additional payment required to cure defaults: None other than arrears listed above

| | |
|---|---|
| **<u>Class 2:</u>** | **<u>Litton Loan as Servicer for Fremont Loan or its Assignee</u>** |
| Description: | First Mortgage on Investment Property |
| Insider? | No |
| Impairment: | No |
| Treatment: | Debtor will make monthly payments pursuant to the terms |

7

|                    |                                                              |
|--------------------|--------------------------------------------------------------|
|                    | of the loan note                                             |
| Secured claim of:  | Litton Loan Servicing as agent for the Mortgage Electronic   |
|                    | Registration System, Inc. ("MERS"), as Nominee for           |
|                    | Fremont Investment and Loan, its successors and assigns      |
| Collateral:        | 106-13 37th Ave., Corona, New York                           |
| Allowed Amount:    | To be determined                                             |
| Priority of lien:  | First                                                        |
| Principal owed:    | $746,455 (approximately)                                     |
| Pre-pet. arrearage:| None                                                         |
| Total claim:       | $746,455 (approximately)                                     |
| Impaired?          | No                                                           |
| Monthly Pmt.:      | $4,265.30 (approximately)                                    |
| Pmts Begin:        | Payments are made monthly                                    |
| Pmts End:          | to be determined                                             |
| Balloon pmt:       | None                                                         |
| Interest rate %:   | Per contract                                                 |
| Treatment of Lien: | Per contract or as otherwise provided by court order         |

Additional payment required to cure defaults: None

### 3.      Class of General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The Debtor does not know if the second lien holders will file proofs of claim. If that is the case, the aggregate amount of their two claims will be approximately $200,000. If they file claims, the Debtor does not anticipate paying unsecured creditors more than 3% of their claims.

The following chart identifies the Plan's proposed treatment of Class 3, which contains general unsecured claims against the Debtors.

**Class 3:**         **General Unsecured Claims**

|                 |                                                  |
|-----------------|--------------------------------------------------|
| Description:    | All general unsecured claims                     |
| Treatment:      | Paid from 3% to 10% of claims                    |
| Impaired?       | Yes                                              |
| Treatment:      | Paid in every three months in quarterly installments |
| Quarterly Pmt:  | Not less than $600 on average                    |
| Pmts Begin:     | 12 months after the Effective date               |
| Pmts End:       | 48 months from the Effective Date                |
| Estimated percent of claims paid: | 3% to 10%                      |

Attached as Exhibit E is a schedule of proposed plan payments.

8

####     4.        **Class of Equity Interest Holders**

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners.  In a limited liability company ("LLC"), the equity interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan(s proposed treatment of the class[es] of equity interest holders:

**Class 4**          **Equity Interest Holder**

| | |
|---|---|
| Description: | The Debtor's interest in all pre-petition and post-petition property |
| Impairment: | None |
| Treatment: | Debtor will retain their interest in all property |
| Equity holders: | The Debtor |
| Impaired? | No |

### D.    **Means of Implementing the Plan**

1.    <u>Source of Payments</u>

Payments and distributions under the Plan will be funded by the following:

Source:   Debtors' wages and rental income

2.    <u>Post-confirmation Management</u>

The Debtor manages his own affairs.

### E.    **Risk Factors**

The proposed Plan has the following risks: The Debtor's income is dependent upon his and his ability to continue to generate rental income and some wages.  Because the Debtor has maintained his income steadily for the last few years, he believes there is little risk that he will not generate enough income to fund the Plan.

### F.    **Executory Contracts and Unexpired Leases**

The Plan lists all executory contracts and unexpired leases that the Debtor will assume under the Plan.  Assumption means that the Debtor has elected to continue to perform the obligations

under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.  The Plan also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in the Plan will be rejected under the Plan.  Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

G.    **Tax Consequences of Plan**

Creditors and equity interest holders concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

The court can not approve – or confirm – the Plan unless it meets the requirements listed in § 1129 of the Code.  These include the requirements that the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A.    **Who May Vote or Object to the Plan**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Debtor believes that classes 1, 2, and 3 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The

Debtor believes that class 4 is unimpaired and that holders of claims in that class is not entitled to vote to accept or reject the Plan.

1.    **What Is an Allowed Claim or an Allowed Equity Interest?**

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim in this case was July 23, 2010.

2.    **What Is an Impaired Claim or Impaired Equity Interest?**

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.    **Who is Not Entitled to Vote**?

The holders of the following five types of claims and equity interests are **not** entitled to vote to accept or reject the Plan:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

11

- holders of administrative expenses.

However, even if you are not entitled to vote on the plan, you have a right to object to the confirmation of the plan and to the adequacy of the disclosure statement.

### 4. **Who Can Vote in More Than One Class**?

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B. **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by cram down on non-accepting classes, as discussed later in Section [B.2.].

### 1. **Votes Necessary for a Class to Accept the Plan**

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2. **Treatment of Non-accepting Classes**

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a cram down plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

You should consult your own attorney if a cram down confirmation will affect your claim or equity  interest, as the variations on this general rule are numerous and complex.

### C. **Liquidation Analysis**

12

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to this Disclosure Statement as Exhibit D.

### D.      Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 1.      Ability to Initially Fund Plan

The Debtor believes that he will have enough income to pay all the claims and expenses that are entitled to be paid under the Plan.  More importantly, he has obtained the consent of his professionals to take their fees over time.  If he had not done so, he would have been required to pay the professional fees in full before the plan could be confirmed by the court.  As a result, the Debtor will not need funds to confirm his plan, other than the funds needed to satisfy outstanding quarterly fees owed to the U.S. Trustee, if any.  The Debtor believes that if the professionals had not agreed to defer payment of their fees under the plan, his case would be converted to a chapter 7 case, or dismissed, and unsecured creditors would receive no distribution on their claims.

### 2.      Ability to Make Future Plan Payments And Operate Without Further Reorganization

The Debtor must also show that he will have enough cash over the life of the Plan to make the required Plan payments.  The Debtor has provided projected financial information. Those projections are listed in Exhibit F.

As provided in § 1129(B), the Plan provides payment of no less than all of the  Debtor's projected disposable income for the 48 month period following the effective date of the Plan. The financial projections show that he will have an aggregate annual average cash flow, after paying living expenses of no less than $18,000. That amount is sufficient to pay no less than 10% to Class 4 creditors and pay a portion of the fees due to professionals.

You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

## V.      EFFECT OF CONFIRMATION OF PLAN

### A.      Discharge of Debtors

Confirmation of the Plan does not discharge any debt provided for in the Plan

until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code.  The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### B.    Modification of Plan

The Debtor may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or a new Plan and re-solicitation of votes on the Plan.  Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

### C.    Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Dated: September 28, 2012
Brooklyn, New York

*S/Claudio Meza*
Claudio Meza

# Exhibit A

Norma E. Ortiz, Esq.
ORTIZ & ORTIZ, L.L.P.
127 Livingston Street
Brooklyn, New York, 11201
Tel. (718) 522-1117

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re

CLAUDIO MEZA,                                          Case No.  11-47197
                                    Debtor.
--------------------------------------------------------X      Chapter 11

## AMENDED PLAN OF REORGANIZATION

### SUMMARY

This Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy
Code (the "Code") proposes to pay creditors of Claudio Meza (the "Debtor") from his future
income.  The Plan provides for two classes of secured claims; one class of unsecured claims; and
no classes of equity security holders.  Unsecured creditors holding allowed claims will receive
distributions that the proponent of this Plan has valued at approximately **three (3%) to ten
(10%) percent** of allowable claims.  This Plan also provides for the payment of administrative
claims in full on the effective date or this plan, unless otherwise agreed to by the administrative
claimants, and priority claims in full pursuant to the applicable Bankruptcy Code provision.

All creditors should refer to **Articles III through VI** of this Plan for information
regarding the precise treatment of their claim.  A disclosure statement that provides more
detailed information regarding this Plan and the rights of creditors and equity security holders
shall be   circulated with this Plan.  **Your rights may be affected. You should read these
papers carefully and discuss them with your attorney, if you have one. (If you do not have
an attorney, you may wish to consult one.)**

# ARTICLE I

## DEFINITIONS AND RULES OF CONSTRUCTION

1.00    Definition of Terms.

1.01    Administrative Claim:   means a Claim for any cost or expense of administration in connection with this Bankruptcy Case of a kind specified in Sections 502(f) and 503(b) of the Bankruptcy Code and referred to in Sections 507(a)(2) and 1114 of the Bankruptcy Code, including, without limitation, any actual and necessary cost and expense of preserving the Estate of the Debtor incurred after the Filing Date and up to Confirmation; any indebtedness or obligation incurred or assumed by the Debtor in connection with the ordinary conduct of its business; allowances of compensation for legal or other professional services and reimbursement of costs and expenses under Section 330(a) or 331 of the Bankruptcy Code or otherwise allowed by the Court; all costs of making distributions and providing notices and ballots with respect to the Plan; and all fees and charges assessed against the Estate under Chapter 123, Title 28, United States Code.

1.02    Administrative Creditor:   means a person or entity holding an Allowed Administrative Claim.

1.03    Allowed:  when used in conjunction with the Claims or Class of Claims defined in this Plan, means a Claim or portion of a Claim: (i) which is scheduled by the Debtor pursuant to Sections 521(1) of the Bankruptcy Code, other than a Claim which is scheduled by the Debtor as disputed, contingent or unliquidated; or (ii) for which proof has been filed, pursuant to Section 501(a) of the Bankruptcy Code; or (iii) any Claim allowed pursuant to this Plan and, in each such case in (i) and (ii) above, as to which either (a) no objection to the allowance thereof has been interposed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court or (b) such an objection is so interposed and the Claim shall have been allowed by a Final Order and to the extent so allowed by the Court.  Notwithstanding the foregoing, Claims shall be Allowed to the extent that this Plan provides that they are deemed Allowed.

1.04    Bankruptcy Case:   means this Chapter 11 reorganization case, filed under Case No. 09-50715, and commenced by the filing of the Debtor's voluntary chapter 13 petition with the Clerk of the Court on May 28, 2009.

1.05    Bankruptcy Code:   means Title 11 of the United States Code, 11 U.S.C.

Sections 101, et seq., as amended.

1.06    <u>Bankruptcy Court or Court</u>:   means the United States Bankruptcy Court for the Eastern District of New York, or any other court having jurisdiction over the Bankruptcy Case.

1.07    <u>Bankruptcy Rules</u>:  means the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of the Bankruptcy Court, together with all amendments and modifications from time to time made thereto as prescribed under 28 U.S.C. Section 2075.

1.08    <u>Business Day</u>:   means any day other than a Saturday, Sunday or a "legal holiday," and as that term is defined in Bankruptcy Rule 9006.

1.09    <u>Cash</u>:   means cash and cash equivalents, including but not limited to, bank deposits, checks and other similar items and the Settlement Funds.

1.10    <u>Causes of Action</u>:   means, if any, all of the Estates legal and equitable interest in any claim, as that term is defined in Bankruptcy Code 101(5), against any individual or entity.

1.11    <u>Chapter 11</u>:   means Chapter 11 of the Bankruptcy Code.

1.12    <u>Claim</u>:   Any right to a payment from the Debtor, whether or not such right is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable in nature, or secured or unsecured; and a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.13    <u>Claimant</u>:   means the holder of a Claim.

1.14    <u>Class</u>:   means a category of holders of Claims as provided for in Article II of this Plan.

1.15    <u>Confirmation</u>:   means the entry of an order by the Court confirming this Plan in accordance with Chapter 11.

1.16    <u>Confirmation Date</u>:   means the date upon which the Court enters an order confirming this Plan in accordance with Chapter 11.

1.17    <u>Confirmation Order</u>:   means the order entered by the Court confirming this Plan in accordance with Chapter 11.

3

1.18        Debtor:   means Claudio Meza as debtor-in-possession.

1.19        Debtors's Professionals:   means the following professional firms: Ortiz & Ortiz, L.L.P., Debtor's Counsel, and Clem Yeboah, C.P.A.

1.20        DIP Account:   means the bank account established by the Debtor as its Debtor-in-Possession bank account in this Bankruptcy Case.

1.21        Disallowed Claims:   means any Claim or portion thereof that has been disallowed by the Court by a Final Order.

1.22        Disbursing Account:   means the bank account that will be established after the Confirmation Date to disburse the payments provided for in the Plan.

1.23        Disbursing Agent:   means the Reorganized Debtor or his designated agent, who shall maintain the Disbursing  Account.

1.24        Disclosure Statement:   means the disclosure statement, as may be amended or modified, that (I) relates to this Plan and (ii) as approved by the Bankruptcy Court under Section 1125 of the Bankruptcy Code, to the extent necessary.

1.25        Disputed Claims:   means (I) a Claim which is scheduled by the Debtor as disputed, contingent or unliquidated, or (ii) any Claim that is not Allowed, or (iii) any Administrative Claim filed by or asserted by a Professional or any other Administrative Creditor to which the Debtor files an objection with the Court, or (iv) any Claim which has been filed pursuant to Section 501(a) of the Bankruptcy Code and as to which an objection to the allowance thereof has been or will be interposed within the time limitation fixed by the Bankruptcy Code, by an order of the Court, or by this Plan, which objection has not been determined, in whole or in part, by a Final Order.

1.26        Effective Date:   means the date selected by the Debtor after Confirmation Date on which no stay of the Confirmation Order is in effect and all conditions specified in the Plan have been satisfied or waived by the Debtor.

1.27        Estate:   means the estate created in this Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

1.28        Executory Contracts:   means executory contracts and unexpired leases as described in Section 365 of the Bankruptcy Code.

1.29        Filing Date:   means August 19, 2011, the date the Debtor filed his Chapter 11 bankruptcy petition with the Clerk of the Court.

1.30     <u>Final Order</u>:   means an order, ruling, or judgment that is in full force and effect, is not stayed, and is no longer subject to review, reversal, modification, amendment,  appeal, or writ of certiorari.

1.31     <u>General Unsecured Claim</u>:   means any Claim other than a Priority Claim, a Priority Tax Claim, or an Administrative Claim.

1.32     <u>Impaired</u>:   means any Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.33     <u>Lien</u>:   shall have the meaning ascribed to such term in Bankruptcy Code Section 101(37).

1.34     <u>Plan</u>:   means this Chapter 11 Plan of Reorganization or as may be further amended or modified.

1.35     <u>Priority Tax Claim</u>:   means any Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.36     <u>Professional or Professionals</u>:   means any professional person or entity as defined by Section 327(a) of the Bankruptcy Code.

1.37     <u>Property</u>:   means the Debtor's collective interest in all of its personal property, or in which the Debtor has an interest, including the Debtor's DIP Account, its furniture and fixtures, good will, and all causes of action to which the Debtor reserves the right to assert as the Reorganized Debtor, if any.

1.38     <u>Record Date</u>:   means the last date fixed pursuant to a Final Order of the Bankruptcy Court for the purpose of voting with respect to this Plan.

1.39     <u>Reorganized Debtor</u>:   means the Debtor immediately following the date upon which the Confirmation Order becomes a Final Order.

1.40     <u>Schedules</u>: means the schedules of assets and liabilities filed in the Bankruptcy Court in the Bankruptcy Case, as have been and may be further amended.

1.41     <u>Settlement Funds</u>: means the proceeds of the settlement of the Adversary Proceeding.

1.42     <u>Unclaimed Property</u>:  means any Cash that is unclaimed within sixty days after such Cash is distributed, and shall include: (I) checks, and the funds represented thereby, that have been returned as undeliverable; (ii) funds for checks that have not been paid or negotiated; and (iii) checks, and the funds represented thereby, that were not mailed or delivered because of the absence of a proper address to

which to mail or deliver same.

1.43        Unsecured Tax Claim:  means any tax Claim that is a general unsecured Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01   Class 1.        The claim of JP Morgan Chase National Association, under 5304282436, to the extent allowed as a secured claim under § 506 of the Code.

2.02   Class 2.        The claim of Litton Loan Servicing as agent for the Mortgage Electronic Registration System, Inc. ("MERS"), as Nominee for Fremont Investment and Loan, its successors and assigns under Loan No. 41083809, to the extent allowed as a secured claim under § 506 of the Code.

2.04   Class 3.        All unsecured claims allowed under § 502 of the Code.

2.05   Class 4.        The interests of the individual Debtor in property of the estate.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01   Unclassified Claims. Under section §1123(a)(1), administrative expense claims are not in classes.

3.02   Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03   Priority Tax Claims.  Each holder of a priority tax claim, if any, will be paid in full, with interest, at the rate of interest required under applicable state and federal law pursuant to Code § 129(a)(9)(C).

3.04   United States Trustee Quarterly Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any quarterly fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Secured Claim of J.P. Morgan Chase Bank, Nat'l. Association under Min No. 100062604703987695 | Unimpaired | The Debtor will continue to honor the terms of the loan agreement, under account number 5304282436, with J.P. Morgan Chase Bank, N.A. and the mortgage encumbering the property known as 94-05 Alstyne Ave., Corona, New York, and listed in the county records as Block 1603, Lot 87, and cure the arrears set forth in proof of claim filed by the creditor in the amount of $2,157.20.  The monthly mortgage and notes payments are presently $3,130.74.  The monthly payment amount may increase or decrease to reflect fluctuations in the amount due for escrow. |
| Class 2 – The claim of Litton Loan Servicing as agent for the Mortgage Electronic Registration System, Inc. ("MERS"), as Nominee for Fremont Investment and Loan, its successors and assigns | Unimpaired | The Debtor will continue to honor the terms of the loan agreement that is serviced by Litton Loan Serving, as agent for Fremont Investment and Loan, or its assignee, under account number 0041083809, and the mortgage encumbering the property known as 106-13 37th Ave., Corona, New York, and listed in the county records as Block 1748, Lot 48.  The Debtor shall continue to make monthly payments pursuant to the terms of the mortgage and note as modified by agreement dated August 5, 2011.  The monthly payments are presently $4,265.30 for the 60 month period commencing September 1, 2011.  They increase in the 61st month to $4,231.56. |
| Class 3 - General Unsecured Creditors | Impaired | Unsecured creditors shall receive no less than three percent (3%) of their allowed claims.  Such payments shall be made every three months commencing 12 months from the Effective Date of the Plan. |

| Class 4 - Debtor's interest in Estate Property | Unimpaired | Debtor will retain his interest in estate property. |
|---|---|---|

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest have filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.  Objections to claims will be filed no later than 60 days from the Effective Date.

5.02    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtors will assume the following executory contracts and/or unexpired leases effective upon the Effective date of this Plan as provided in Article VII:

Not Applicable

(b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the Effective date of this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    Time of Distributions Under the Plan.

Monthly mortgage note payments to Class 1 and 2 claimants shall continue to be paid by the Debtor in the ordinary course outside of the Plan. Payments to Class 1 for pre-petition mortgage or escrow arrears shall commence on the Effective Date, or as soon as reasonably possible thereafter. Payments to Class 3 claimants with Allowed Claims shall commence 12 months from the Effective Date or as soon as reasonably possible thereafter.

7.02    Manner of Payments Under the Plan.

Payments to be made by the Debtor pursuant to this Plan shall be made by check drawn on the Disbursing Account or upon such other terms as may be agreed upon by the Reorganized Debtor and the Claimant.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: [Insert additional definitions if necessary].

8.02    Effective Date of Plan. The effective date of this Plan is the eleventh business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03    Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE

9.01.   <u>Discharge.</u> Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Respectfully submitted,


Dated: September 28, 2012
Brooklyn, New York

*<u>S/Claudio Meza</u>*
Claudio Meza

10

# Exhibit B

[Exhibit to be provided]

# Exhibit C

[Exhibit to be provided]

**Exhibit D**

[Exhibit to be provided]

**Exhibit E**

[Exhibit to be provided]

# Exhibit F

[Exhibit to be provided]